UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIE D. HULL,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,[1]<br><br>    Defendant. | No. 11 C 6589<br><br>Magistrate Judge Mary M. Rowland |

# MEMORANDUM OPINION AND ORDER

Plaintiff Willie D. Hull filed this action seeking reversal of the final decision of the Commissioner of Social Security (Commissioner) denying his applications for Childhood Disability Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act (SSA). 42 U.S.C. §§ 416, 423(d), 1381a. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Plaintiff has filed a motion for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this opinion.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security and is substituted for her predecessor, Michael J. Astrue, as the proper defendant in this action. Fed. R. Civ. P. 26(d)(1).

# I. THE SEQUENTIAL EVALUATION PROCESS

To recover Childhood Disability Benefits (CDB) or Supplemental Security Income (SSI) under Titles II and XVI of the SSA, a claimant must establish that he or she is disabled within the meaning of the SSA.[2] *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a

---

[2] CDB "provides a monthly benefit for designated surviving family members of a deceased insured wage earner." *Astrue v. Capato ex rel. B.N.C.*, 132 S. Ct. 2021, 2027 (2012). In general, an individual qualifies for CDB if he or she is below a specified age limit (18 or 19), or is under a disability which began prior to age 22, and was dependent on the insured at the time of the insured's death. 42 U.S.C. § 402(d)(1). The regulations governing the determination of disability for SSI are found at 20 C.F.R. § 416.901 *et seq*.

claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

## II. PROCEDURAL HISTORY

Plaintiff was found disabled due to attention deficit hyperactivity and borderline intelligence and began receiving SSI benefits when he was five years old in 1993. (R. at 17, 26). As required by statute, Plaintiff's SSI claim was redetermined under the adult disability standard when he reached age eighteen. (*Id.* at 17, 26–27). On November 14, 2008, during the pendency of this SSI redetermination, Plaintiff filed for CDB, alleging that he became disabled on September 10, 1993, because of a history of attention deficit hyperactivity disorder and a history of borderline intellectual functioning. (*Id.* at 17, 28). The CDB application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 9–13, 17, 28, 53–56). In the meantime, Plaintiff was found not disabled as of September 1, 2009, for purposes of the age-eighteen SSI redetermination, and this SSI claim was escalated to the hearing level concurrent with his CDB claim. (*Id.* at 17, 26–27, 48–52).

On March 31, 2010, Plaintiff, appearing pro se, testified at a hearing before an Administrative Law Judge (ALJ). (R. at 17, 135–50). The ALJ also heard testimony from Adrina V. Hull, Plaintiff's mother.[3] (*Id.* at 17, 135–36, 148–50).

---

[3] The hearing transcript erroneously refers to Plaintiff's mother as "Atrina" Hull. (*Compare* R. at 135 *with id.* at 77).

The ALJ denied Plaintiff's request for benefits on April 22, 2010. (R. at 17–25). Applying the five-step sequential evaluation process, the ALJ found at step one, for purposes of Plaintiff's CDB claim, that Plaintiff has not engaged in substantial gainful activity since September 10, 1993, the alleged onset date. (*Id.* at 20). At step two, the ALJ found that Plaintiff's history of borderline intellectual function, history of attention deficit hyperactivity disorder, and history of childhood ventricular septal deficit[4] are severe impairments. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.*).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[5] and determined that he has the RFC to perform light work except that he is limited to performing one- to three-step jobs. (R. at 21). At step four, the ALJ determined that Plaintiff has no past relevant work. (*Id.* at 23). At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ used the Medical-Vocational Guidelines (Grid) to determine that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.[6] (*Id.* at 24). Accordingly, the ALJ con-

---

[4] "Ventricular septal defect describes one or more holes in the wall that separates the right and left ventricles of the heart." <www.ncbi.nlm.nih.gov>

[5] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

[6] The Grid reflects the Commissioner's determination that "certain combinations of age, education, work experience, and exertional limitations direct a finding of either disabled or not disabled at step five of the disability analysis." *Abbott v. Astrue*, 391 F. App'x 554, 556

cluded that Plaintiff was not suffering from a disability as defined by the SSA. (*Id.* at 24–25).

The Appeals Council denied Plaintiff's request for review on July 22, 2011. (R. at 2–5.) Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to

---

(7th Cir. 2010); *see Haynes v. Barnhart*, 416 F.3d 621, 627–28 (7th Cir. 2005); 20 C.F.R. pt. 404, subpt. P, app. 2.

permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. DISCUSSION

Plaintiff raises five arguments in support of his request for a reversal and remand: (1) the ALJ failed to properly develop the record; (2) the RFC was not supported by the record; (3) the RFC did not incorporate Plaintiff's moderate restrictions in social functioning; (4) the ALJ failed to properly consider Plaintiff's concentration limitations; and (5) the ALJ failed to procure vocational expert testimony to support his finding that Plaintiff retained the ability to perform a significant number of jobs. (Mot. 1, 5–18).

### A. The ALJ Did Not Obtain a Valid Waiver of Counsel

Plaintiff first asserts that the ALJ failed to develop a full and fair record—a duty that was heightened by Plaintiff's decision to proceed without counsel. (Mot. 5–11). Plaintiff takes particular issue with the ALJ's decision to assess Plaintiff's physical

and mental conditions without securing the medical records accumulated during Plaintiff's prior thirteen years of receiving disability benefits. (*Id.* 6–8). Plaintiff also challenges the ALJ's failure to determine whether Plaintiff had good cause for missing his consultative examinations. (*Id.* 8–10). Finally, Plaintiff points to the length of the hearing—26 minutes—as further proof that the ALJ did not fully and fairly develop the record in this case. (*Id.* 10–11).

While a claimant has a right to be represented by counsel at the administrative hearing, the right may be waived. *Skinner*, 478 F.3d at 841; 42 U.S.C. § 406; 20 C.F.R. § 404.1700. "To ensure valid waivers, ALJs must explain to pro se claimants (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Skinner*, 478 F.3d at 841 (citations omitted).

At the administrative hearing, the ALJ advised Plaintiff of his right to counsel as follows:

> Okay, you have the right to have an attorney or non-attorney representative if you want to. I'm required to go through this, I'm going to go through a little bit. When I get done you'll decide at that point whether you want to waive your right to representation at the hearing today or whether you want to have a short delay to get a representative. It's not going to be more than a month in the way of the delays. On that sheet of paper that you have [INAUDIBLE] that's up there is legal aide [*sic*] and several other organizations that potentially could represent you free of charge depending on your income, depending on whether they've got people to do the work, that's always an issue and then if they come and take a look at the file and decide they want to take it then they don't charge you any money.

* * *

> On the other side of the page you've got the Chicago Bar, the Cook County Bar, [INAUDIBLE] and a couple of others. These all charge money. The only money available in your case would be like the three months. They could get 25 percent of any back benefits sounds like there's three months of money available maybe and they cannot surpass $6,000 which obviously it wouldn't with only three months. So, it's up to you. If you get a representative and you are successful in your case then they get paid that money that I was just talking about. If you get a representative, you go through the process and you loose [*sic*], in that case you don't pay representative, they take the case contingent on winning the case. So, the point to you is do you wish to waive your right to representation and do your hearing today or do you wish that I reschedule it and have an opportunity to find representation.

(R. at 137–38, 141–42). Plaintiff waived his right to counsel, and the hearing continued. (*Id.* at 142).

Plaintiff contends that the ALJ did not inform him of the manner in which an attorney could aid in the proceedings or of the required court approval for the payout of fees from past due benefits. (Mot. 6). The Court agrees. The ALJ's omission is all the more glaring here because in deciding to proceed without representation, Plaintiff stated: "The facts is in the file and it doesn't matter about representation, it's in the file they're going to go by the facts that's in the file." (R. at 142). The ALJ did not correct this misunderstanding by explaining, for example, that a representative could help introduce additional evidence by questioning Plaintiff at the hearing and gathering additional medical information.

The Commissioner appears to concede that the ALJ's notice did not comport with the Seventh Circuit's requirements for establishing a valid waiver. (Resp. 5). Instead, the Commissioner argues that the waiver was sufficient because prior to the hearing, Plaintiff was "advised on numerous occasions that he could obtain an at-

torney to help him with his claim for disability insurance benefits." (Resp. 4). While some of the prehearing notices cited by the Commissioner arguably provided Plaintiff with the requisite information, it was *the ALJ's role* to insure that Plaintiff had "sufficient information to enable him to intelligently decide whether to retain counsel or proceed *pro se*." *Hawwat v. Heckler*, 608 F. Supp. 106, 108 (N.D. Ill. 1984).

The ALJ's role is even more critical when a claimant may be incompetent or have a mental illness. "When there is a possibility that a claimant may be incompetent or have a mental illness, the ALJ should explain the right to counsel and the role of an attorney in the hearing in even greater detail and with greater attention toward ensuring that the claimant understands these issues." *Hawwat*, 608 F. Supp. at 108 (citing *Smith v. Secretary of HEW,* 587 F.2d 857, 860 (7th Cir. 1978)). Here, in light of Plaintiff's history of borderline intellectual functioning and attention deficit hyperactivity disorder (R. at 20), the ALJ should have ensured that Plaintiff thoroughly understood the role of counsel before accepting his waiver. Because the ALJ failed to inform Plaintiff that an attorney could aid him in the proceedings and that court approval was required for the payout of fees from past due benefits, the ALJ obtained an invalid waiver of counsel.

## B. The ALJ Failed to Adequately Develop the Record

While an ALJ is required to secure a valid waiver of counsel, the lack of a valid waiver does not alone warrant remand. Instead, the ALJ's failure to obtain a valid waiver of counsel heightens the ALJ's duty to develop the record. *Skinner*, 478 F.3d at 841. "When an ALJ fails to adequately inform an unrepresented claimant of the

right to counsel, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.* at 841–42 (citations omitted). "Although pro se litigants must furnish some medical evidence to support their claim, the ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citations omitted); *see* 20 C.F.R. §§ 416.912(d)–(f), 416.919, 416.927(c)(3). Courts generally defer to "the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation." *Nelms*, 553 F.3d at 1098. Accordingly, "a significant omission is usually required before this court will find that the [Commissioner] failed to assist *pro se* claimants in developing the record fully and fairly." *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994). Nevertheless, the Commissioner bears the burden to establish that the ALJ adequately developed the record. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994); *Skinner*, 478 F.3d at 842.

In this case, the ALJ failed to satisfy this heightened duty in several distinct ways. First, the record is devoid of the medical evidence that should have been accumulating at the Agency during the 13 years that Plaintiff was receiving disability benefits. During those 13 years, the Commissioner would have been required to conduct a review at least every 3 years to determine if Plaintiff was still eligible for benefits. 42 U.S.C. § 1382c(a)(3)(H); 20 C.F.R. § 416.990. Nevertheless, the ALJ apparently made no effort to locate these records and include them in Plaintiff's file.

The Commissioner contends that it was Plaintiff's responsibility to demonstrate what medical evidence was submitted as part of these three-year reviews. (Resp. 3). But regardless of whether Plaintiff's mother submitted any records, the Agency itself would have generated evidence as part of these reviews. And the burden is on the Commissioner, not Plaintiff, to establish that the ALJ properly developed the record. *Binion*, 13 F.3d at 245; *Skinner*, 478 F.3d at 842.

Second, the ALJ failed to properly determine whether Plaintiff had good cause for missing his consultative examinations. In his decision, the ALJ stated that Plaintiff "failed to appear for the appointments and failed to provide any good cause for missing them." (R. at 22). However, because the ALJ did not ask Plaintiff at the hearing the reason he did not go to the examinations, the basis for the ALJ's statement is not entirely clear. When both Plaintiff and his mother stated that they never received the consultative examination appointment letters, the ALJ cut them off stating, "[i]t's not about the letters." (*Id.* at 142). Moreover, the ALJ's handling of the consultative examination issue is contrary to Agency policy. Agency policy requires the ALJ to not only consider whether a claimant has good cause for failing to attend a consultative examination but also requires:

> If an ALJ finds that a claimant did not have good cause for failing to submit requested evidence or undergo a requested [consultative examination] or test, he or she will mark the [reports of contact] and other documents which support that finding as proposed exhibits, and give the claimant and the representative (if any) an opportunity to review and comment on the proposed exhibits.

Hearings, Appeals and Litigation Law Manual (HALLEX) I-2-5-24(F).[7] Agency procedures further caution that when a claimant who suffers from a mental impairment fails to attend a consultative examination, "the ALJ must consider the effect of the mental impairment when determining whether the claimant had good cause" and must take additional steps, including obtaining the evidence from other sources. HALLEX I-2-5-24(C). Here, although the ALJ found that Plaintiff had a history of borderline intellectual function and attention deficit hyperactivity disorder (R. at 20), the ALJ failed to consider the impact of Plaintiff's mental impairments on his failure to attend the consultative examinations.

The Commissioner argues that the "ALJ could reasonably rely on the Agency's documentation regarding Plaintiff's failure to attend two consultative examinations." (Resp. 8; *see id.* 7–8). The Court, however, must limit its review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 90–93 (1943); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("the government's brief and oral argument . . . seem determined to dissolve the *Chenery* doctrine in an acid of harmless error"). And here, the ALJ summarily concluded—without any reasoning—that Plaintiff "failed to provide any good cause for missing [his consultative examinations]." (R. at 22).

---

[7] HALLEX is a policy manual written to convey "guiding principles, procedural guidance and information to the Office of Hearings and Appeals Staff." HALLEX I-1-001. While the Court is not bound by HALLEX provisions, it "may look to the HALLEX as a guide for procedural rules in Social Security . . . cases." *DiRosa v. Astrue*, No. 10 C 7243, 2012 WL 2885112, at *5 (N.D. Ill. July 13, 2012); *see Davenport v. Astrue*, 417 F. App'x 544, 547–48 (7th Cir. 2011).

Finally, the ALJ's questioning of Plaintiff at the hearing was perfunctory. The hearing, which lasted approximately 26 minutes, is recorded in 14 transcript pages. (R. at 137–50). While the length or brevity of a benefits hearing is not dispositive of whether the ALJ fulfilled the obligation to adequately develop the record, *Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir. 1991), a perfunctory hearing may be indicative of such a failure, *see, e.g., Nelms*, 553 F.3d at 1097, 1099 (finding that during a 25-minute hearing, "the ALJ did not probe, in any depth, [claimant's] recent past at the hearing or gather *any* medical evidence to fill the two-year gap in the record"); *Henderson v. Barnhart,* 205 F. Supp. 2d 999, 1010 (E.D. Wis. 2002) (finding that the Commissioner did not demonstrate a fully and fairly developed record where the hearing "was brief, almost perfunctory, lasting barely one-half hour"); *Harris v. Barnhart*, 219 F. Supp. 2d 966, 974 (E.D. Wis. 2001) (finding that the ALJ failed to fully and fairly develop the record during a 23-minute hearing); *Bailey v. Barnhart*, No. 01 C 1909, 2002 WL 31040350, at *14 (N.D. Ill. Sept. 12. 2002) (finding that the ALJ failed to develop the record at claimant's hearing, which was transcribed onto only 11 pages). Here, given the large gaps in the record, Plaintiff's pro se status, and his mental impairments, the perfunctory, 26-minute hearing did not provide "a fairly complete picture" of Plaintiff's impairments. *Cf. Nelson v. Apfel*, 131 F.3d 1228, 1236 (7th Cir. 1997) (despite the ALJ's "vague, undirected questioning," "the ALJ had before him a fairly complete picture of [claimant's] developmental and behavioral problems").

The Commissioner failed to establish that the ALJ adequately developed the record. *Binion*, 13 F.3d at 245; *Skinner*, 478 F.3d at 842. The ALJ's omissions were significant because of the utter lack of medical evidence in the record. *Luna*, 22 F.3d at 692. Moreover, given Plaintiff's history of ventricle septal defect and reported shortness of breath (R. at 22, 103, 207), the ALJ should have ordered a cardiac consultative examination. *McFadden v. Astrue*, 465 F. App'x 557, 560 (7th Cir. 2012) ("An ALJ has a responsibility to request a consultative examination if the applicant's medical sources do not provide enough information to evaluate whether the applicant is disabled . . . ."); *see* 20 C.F.R. §§ 404.1517, 404.1519a, 416.917, 416.929a; *see also Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004) ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernible."). Instead, the ALJ made his RFC determination and applied the Grid based on little, if any, medical evidence. (*See* R. at 23) ("[N]o [medical] opinions exist in the record . . . and no treating source statements exist.").

## C. Summary

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. On remand, the ALJ shall fully and fairly develop the record. All records accumulated during the 13 years that Plaintiff was receiving benefits shall be located and included in Plaintiff's file. In-

ternal medicine, psychological, and cardiac consultative examinations shall be ordered, and the ALJ shall make all reasonable efforts to insure that Plaintiff is notified and attends the examinations. If Plaintiff appears at a subsequent hearing without representation, the ALJ shall obtain a valid waiver of counsel before proceeding.[8]

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [21] is **GRANTED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: July 17, 2013

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge

---

[8] Given the Court's decision to remand the case to fully develop the record, it declines to address Plaintiff's other contentions. Nevertheless, on remand, the ALJ shall reevaluate Plaintiff's physical and mental impairments and RFC, considering all evidence in the record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. Further, if Plaintiff's RFC includes "nonexertional limitations that might significantly reduce the range of work [he] can perform, the ALJ may not rely on the Grid to find a claimant not disabled but must instead consult a VE to determine whether the claimant can perform a significant number of jobs." *Villano*, 556 F.3d at 564; *see Stanley v. Astrue*, 410 F. App'x 974, 977–78 (7th Cir. 2011) (citing VE's testimony that limiting claimant to three-step tasks "significantly compromised" the occupational base).